And we will take up U.S. v. Franklin. Good morning. May it please the Court, Michael Tanaka appearing on behalf of Mr. Franklin. This case involves both an illegal stop and an illegal search, and accordingly, district court erred in denying the suppression motion. With respect to the stop, Mr. Franklin was driving down the street apparently lawfully. The police noticed that he did not have a rear plate, pulled in behind him. He made a turn, and they stopped him for not having a rear plate. Now, the police admitted that not having a rear plate is not a violation. And, in fact, if you drive in way down the street, you'll notice many cars without rear plates. So at that point, there was really no reason to stop him on the lack of a rear plate. In fact, evidence at the hearing showed that Mr. Franklin's car had a sticker in it, albeit a year later. But there was nothing to suggest that that had been placed there subsequently, which would make driving without the rear plate perfectly legal. Okay. But wasn't there a second ground for the Terry stop, and that was the speeding? The officer testified a couple of times that he stopped him for not having a rear plate, and then upon further prompting said, oh, yeah, by the way, he also sped up as he turned the corner. Didn't they also submit declarations, the officers, that they had stopped him both because of the absence of the rear license plate and because of the speeding? No. The declaration just referred to the absence of the rear plate. In his initial testimony, he also said that he stopped him because of not having a rear plate. And then upon later questioning, he said that he had accelerated and sped up after the turn. The district court credited that testimony, right? The district court said that he accelerated, which maybe splitting hairs is not the same as saying that there was a speeding violation. And if you look at the evidence, the physical evidence makes it seem unlikely that the man did speed. They submitted evidence that this was a short block that he – short two blocks that he turned into. The defense investigator said that it took 20 seconds to drive those two blocks at the speed limit. And the officer said, well, he was going approximately 45, which is almost double that. I'm sorry. I'm sorry. I was just coming through this because I thought you had maybe made a misstatement to me. You didn't clarify. I asked you whether the declarations of the officers said that they were speeding, that he had been kind of been speeding. And you said no. Yeah, I believe that. Actually, they both say that. John Velos and Michael Nagel both talk about that. The speed limit on the street was 25 and your client was going 45. Well, they say that. They think they made him a person speeding, but. No, they actually say it quite explicitly. Counsel, I think Judge Ferris gives wonderful advice from the bench, and I'm going to indulge in just giving you a little advice from the bench, and that is concede, but you have to concede and make your best argument from that. No. No, I understand. And I guess my only point was that what he said was that the man was speeding, but the stop was for the lack of the rear plate. I mean, he was going, he did say he was going at the speed of it, but he stopped him for lack of the rear plate. But be that as it may, assuming that he did stop him for speeding and that he was speeding, that still leaves the further question of whether the search was in fact legal. And the grounds that were used to justify it below was that it was a valid parole search. Now, under Knights, in order to do so, you need at least a reasonable suspicion, and that, they say, is the degree of individual. Individual suspicion requires whether there was a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. Now, here, there was very little to indicate that there was any criminal conduct occurring to justify the search. Mr. Franklin wouldn't get out of the car, and he grabbed onto the steering wheel, and he had reached over to his bag, and we could say that what he had in mind was to get out the record of the new car purchase. But the policeman certainly at that point had some suspicion that he maybe had a gun or that he had something else to hide. It was odd conduct on his part. It was odd conduct, and though I would take issue that they thought he had a gun, because as the encounter went on, he had his hands on the steering wheel. He did not reach until they asked him, until they said, well, why are you stopping me for? It's because you don't have a rear plate. He said, I have paperwork. He begins to reach. Then they said, no, put your hands back on. And so he did. And his partner, who was on the passenger side of the car, takes out his weapon as he sees him reach, but as soon as he puts his hands back on, he puts the weapon back in, suggesting that he wasn't actually afraid that there was a weapon still within ease of reach of the backpack. But in any case, you're right. It is odd conduct. But the issue then becomes, well, is that odd conduct enough to make it suspicious of some kind of criminal action going on? And we submit that it is not. Mr. Franklin might be guilty of having a bad attitude and perhaps understand that he's always just been pulled over for what he believes to be no reason. And he's maybe not the most cooperative person in the world. But nothing other than that indicated that there was anything criminal going on. And that's what's required, some sort of suspicion that there's criminal activity. There seems to be some dispute as to when he advised them that he was on parole. But if we assume for the moment that he advised them that he was on parole before they did this search, what latitude do the police have at that point to conduct a search? Well, again, Your Honor, they would still need some level of individualized suspicion that something criminal is going on. Obviously, it would be a lesser level than probable cause or even something to conduct a terrorist search. But you need some suspicion, and it has to be based on some objective facts. And we submit that the facts that they had, just the mere failure to get out of the car, which I submit was evidence more of his peak at being stopped than anything else, would not justify a search, a parole search. And obviously, it couldn't be justified as a terrorist search at that point because he had no access to anything in the car, and there was no reason for the officers to go back in there and search anything with particular safety. So it would have to be justified as a parole search. And we submit that there's just not enough suspicion. Kagan. May it please the Court. Eric Silber on behalf of Appelli, the United States. The district court was justified in concluding there was reasonable suspicion both for the initial stop and search. As Judge Wardlaw indicated, there were two reasons for the initial stop. Actually, I think the record supports that there were three reasons for the stop in this case. One was the lack of a license plate. Two was the speeding violation. And three was what the officer testified as was evasive action, which was making essentially a left from the right-hand lane. And then accelerating. I actually want to turn to the speeding first. Both officers indicated in their declaration there was speeding. And although it is not included in the excerpts of record, there was a police report that was prepared on the date of the incident, which was admitted into evidence at the suppression hearing, which indicated that a basis for the stop was speeding. It cited the vehicle code. Boy, why didn't you include that in the record? I can't answer the question on why the government didn't include it. That would be a relevant thing to include in your excerpts. It is. It was admitted into evidence. It was referenced during the hearing. So it is properly before the court. That wasn't why they were following him. Well, they initially pulled behind him because he didn't have the license plates. And under California law, that actually does provide suspicion. It will be inevitable. It involved just such a stop. Even though he had a sticker in the window. I've been driving around my husband's new car with a sticker in the window. Am I subject to stop? Well, I think the first thing he the first thing here is to stay out of Los Angeles. I think the first point here is that there's no evidence the officer saw the sticker. And in fact, there's no evidence there was, in fact, a sticker on the car. Oh, yes, there is. There is evidence that they went and saw the old car and it still had the sticker on it. Well, the district court, though, who was able to watch the testimony of witnesses, found that that evidence was insufficient to establish. But it was evidence, counsel. I apologize, Your Honor. I mean, there was some evidence, but it wasn't sufficient for the district court. And that's really the key point. I think here what the officer made clear is, to answer your question, that it is hard to tell from a sticker whether it's authentic or not, and that although he wouldn't pull someone over simply for that, other conduct such as the evasive action in this case would cause him to pull someone over. And then, again, he testified he didn't see a sticker, didn't recall seeing a sticker. He really didn't remember at all. But that is correct. I mean, that kind of evasive action when combined with what is an apparent traffic violation. And actually, when California looks at the lack of license plates, it's really as evidence that the car is stolen. So, I mean, you have a suggestion at that point that there is some kind of criminal wrongdoing, and then you have evasive action which suggests wrongdoing. And, in fact, evasive action is. . . Isn't evasive action when you find yourself in the right-hand lane and all of a sudden the turn you've got to make is on the left? I've certainly found myself in that situation. Haven't you? Well, I mean, that's certainly. . . I mean, there's always innocent explanations for what. . . in numerous cases for what constitutes reasonable suspicion. In fact, if you look at Terry, all really that people were doing in Terry itself was pacing back and forth, and there was a suggestion from that that they were casing a store and they were looking in the window and things like that. But the conduct itself could have an innocent explanation, but it might not. And the Supreme Court noted in the Ward Law decision as well that running from the police, well, that could have an innocent explanation, but it doesn't necessarily have to. And reasonable suspicion really means the police have a right to clear up any kind of ambiguity like that. They just need particularized and objective facts, which is what happened here. This was essentially a hasty left-hand turn with acceleration when the car pulled in behind. . . the police car pulled in behind the defendant. This case is very much like Rodriguez-Sanchez in which a police car was on the freeway and was pulling up around a defendant's car in that case, and the car veered over two lanes to go off the freeway off-ramp. And this Court held that that did establish reasonable suspicion in that case. In Florida v. Rodriguez, which was an airport stop, it was a couple individuals saw an officer. They said, let's get out of here in response, which the officer heard and then took some kind of evasive action at that point. And the Supreme Court held that that was reasonable suspicion for the stop. I'm less troubled by the stop itself than I am by the search because I'm not sure whether the reasonable suspicion standard even applies because at St. Clair, at what point he told the police that he was a parolee  or whether the police actually needed probable cause here to do this warrantless search. Well, I think two things. First, there was a dispute in the record about whether he mentioned he was on parole before or after the search, but that's a historical fact which the district court found in the favor of the government. And it really was just the. . . What was the district court's actual finding on that? It's at page 117 of the record. And it indicated that it did find the testimony of the officer credible. And it also found that that's normally the way he envisioned this would take place, given the conduct that had happened, the kind of. . . That what? That the Terry stops me, the police goes there, and what's his name? Franklin says, I'm a parolee. No, no. It was after they had to. . . After he disobeyed the order, they had to pull him out of the car. The court found that it would be normal to have some kind of questioning at that point. Then the stop would occur after that. It wasn't the. . . Search. So they pulled him out of the car, and then they did the search. Exactly. And the officer found that that would usually be. . . Excuse me. The court found that would usually be preceded by questioning. And, in fact, that was Officer Nagel's testimony. The defendant here testified that Officer Nagel questioned him while Officer Buenuelos conducted the search and found the gun. And Officer Nagel testified that that was not, in fact, what happened, that Officer Nagel was the person who had done the search for the gun. So there really was two conflicting stories in this case. I'm on page 117, and I'm not finding what you say is there. Give me just a moment, Your Honor. I apologize. I may have cited the. . . I think that the inferences that can reasonably be drawn at the questioning of Mr. Franklin preceded the search of the car, it's common that it would be particularly an altercation that involves, and this is going on to page 118, an altercation that involves some kind of physical restraint where cuffs were being attached and there were some basis for the officers to have a concern about both criminality and their own security. And so I think the Court did look at the facts that occurred here as well as the testimony of Officer Nagel and conclude that they did question him and he did indicate the parole before the search. And really that fact, given the evidence was before the district court, wasn't clearly erroneous, which is what the standard review would be for that type of historical fact. I also think even if they didn't know about the parole, under condition, under Michigan v. Long, they would have had an ability to conduct a Terry stop on the vehicle if they had concerns for their safety. And the officer, Officer Nagel in particular, did indicate he had concerns for his safety based on what had happened up to that point. I mean, what you have is the, again, the evasive conduct before the stop. You have a stop in which the officers, their first request was that defendants step out of the car, which under Pennsylvania v. Mims and Rubicola, this Court's decision, is perfectly permissible as a prophylactic measure. It doesn't have to be any reason to do that. And the defendant's response was to refuse to do so. He was asked on numerous occasions. The defendant himself admitted on at least two occasions he simply didn't respond to what the officer said. They then started approaching the car, and the defendant reached for something, and Officer Nagel said he couldn't see what the person was reaching for. They then, Officer Nagel at least, reaches the driver's side of the door and engages in a discussion with the defendant, but the defendant refuses to leave the car. And, in fact, Officer Buenuelos has to remove his hand from the steering wheel, and then both officers pull him out of the car and handcuff him. And I would like to actually clarify one point on the record, at least on safety, from the briefs. There's a suggestion in the defendant's brief that the officers didn't pat down the defendant in this case. And actually, the testimony of the defendant himself repeatedly indicated, and this is in ER 72, 79, and 80, that he was patted down. I think all that behavior established a safety concern. Officer Nagel said he was concerned for his safety, which would have permitted, aside from the parole issue, a search of the vehicle. In any event, the evidence was the defendant was on parole. And at most, what's required in a parole stop is a reasonable suspicion. I actually disagree with the defense counsel that at a kind of the minimum standard or not, it's actually really under the decision of the maximum standard in a parole situation. And there was certainly, apart from the armed and dangerous aspect, defendant's conduct in this case suggested criminal activity and supported the search. And if the panel has no further questions, the government would submit. Thank you, counsel. Just two quick points in response. One, counsel for the government just stated that even without a parole search justification, the search would be justified under Michigan v. Long as a valedictory search. I think that's absolutely wrong. There was a Michigan v. Long. The search would be only valid insofar as they checked where a detainee might gain immediate control of a weapon. Are you concerned most – are you concerned about the stop and the search, adjust the search, adjust the stop? Both, Your Honor, but I would concede that the search issue is by far the stronger one. But obviously, if the stop is no good, anything that follows the stop. The worry I would have about your theory of things in terms of stop, let's assume – just rule out the fact that they said he didn't have a license plate. Let's just assume that they had on a radio message that watch out for a brown Chevrolet and they saw your client driving a brown Chevrolet. That would certainly provide no basis to stop him, just that fact. But if they decided to follow him or to get behind him so they could observe him and he then took evasive action, turned, moved, whatever, wouldn't they have a basis to proceed even though they had no basis to stop him? I know you're concerned he had his license plate, the sticker displayed. So rule it out. Just say, all right, that didn't have anything to do with it. They clearly had no basis to stop him when they first saw him. But trailing him, he gave them a reason. Do you think that this record doesn't demonstrate that they are right and you are wrong on that point? Well, clearly, if they, in fact, stopped him because he was speeding and he, in fact, was speeding, then the stop was legal. All I said was that certainly the declarations in the testimony when they were explaining to Mr. Franklin why they stopped him, they said they stopped him because he didn't have a rear plate. Okay. If they stopped him because he was speeding, then I submit that, yes, you're right, there is no problem with that stop. But once they stop him, then they still searched. All right. And so now you get to the search. Certainly a stop by itself doesn't justify. They get to the search. They they don't know who he is. They don't know very much about him. And he's not being communicated. Now, there's nothing that requires him to talk to the police. Doesn't have to at all. But when they when they're making reasonable inquiry and he acts in a suspicious way, doesn't he provide a basis to order him out of the car? I think the law provides that they can order him out of the car any time they make a valid traffic stop. Right. And so we're not arguing that that order by itself was illegal. And then after they get him out of the car, what stops them from proceeding to the search? And you'll see on this record. And there's we have the issue. There's even once they get him out of the car, then there's only two rationales for searching inside the car. One rationale offered by the government just now that it was an incident to a valid it was a voluntary search. But once they have him out of the car, there's no they don't they they don't need to go back into the car and search this backpack that he has no access to. There are no danger. Even the guy has a personal arsenal in that backpack. He has no access to it at the point. So they cannot search it. Second, as a as a parole search, there has to be some individualized reasonable suspicion he's engaging in criminal activity. Admittedly, his behavior is a little odd, but there's nothing about it that's criminal, especially given the circumstances. He is he's upset that he's being pulled over for what he believes just to be harassment. He puts his hands on the wheel. They jerk him out of the car. But there's nothing criminal about this. There's nothing that suggests anything other than this is a man that that's upset. It doesn't suggest he's committing a crime. And on that basis, there was no reason to search. All right. Thank you very much. Counsel. Yes. Mrs. Franklin is submitted and we will take up Trudeau versus direct marketing concepts.
judges: B. Fletcher, Farris, Wardlaw